IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

DAMION KERR,

    Plaintiff,

v.                                                        Civil Action No. 3:07cv422

U.S. DEPARTMENT OF JUSTICE,

    Defendant.

## MEMORANDUM OPINION

Damion Kerr, a federal inmate proceeding *pro se*, filed this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.*, alleging medical malpractice against the Bureau of Prisons (the "BOP"). Jurisdiction is proper pursuant to 28 U.S.C. § 1346(b)(1).[1] Kerr maintains that the BOP negligently treated his right elbow, resulting in pain and deformity. On January 25, 2008, the United States moved to dismiss the action under Federal Rule of Civil Procedure 12(b)(6). On May 8, 2008, the Court ordered Kerr to show cause why his Complaint should not be dismissed. Kerr responded on May 16, 2008, and the United States replied on May 23, 2008. The matter is ripe for adjudication.

---

[1] 28 U.S.C. § 1346(b)(1) states in relevant part:

[T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

## I. Standard of Review

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (*citing* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In *Bell Atlantic Corp.*, the Supreme Court noted that the complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." 127 S. Ct. at 1964-65 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 1965 (citation omitted), to one that is "plausible on its face," *id.* at 1974, rather than "conceivable." *Id*. Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (*citing Dickson v. Microsoft Corp*., 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d

1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. Facts

Kerr's complaint arises from the medical care he received while he was detained at Federal Correctional Center Petersburg ("FCC Petersburg") in Petersburg, Virginia.[2]

On the evening of December 16, 2004, Kerr complained to a nurse about right elbow pain from an injury sustained while playing basketball. The nurse gave Kerr pain medication, instructed him to elevate his arm, and gave him a pass to report for follow-up care the next morning.

Kerr returned for a follow-up examination on the morning of December 17, 2004, during which a mid-level practitioner examined him. There was swelling around Kerr's elbow and his range of motion was limited, so the practitioner applied a splint, referred him to an orthopedic specialist, and ordered a seven-day convalescence.

During sick call on December 22, 2004, a physician x-rayed Kerr's right elbow and referred him to an orthopedic surgeon, who that same afternoon diagnosed a fractured radial head and recommended surgery. Kerr received surgery on the fractured radial head on December 27, 2004.

The orthopedic surgeon saw Kerr for a follow-up appointment on January 19, 2005. Kerr's elbow was healing. The orthopedic surgeon instructed Kerr to complete range of motion

---

[2] Presently, Kerr is incarcerated at the CI Reeves III Correctional Institution in Pecos, Texas.

exercises and return for follow-up in four weeks. Although Kerr was on the list to attend his follow-up appointment, he did not report to the Health Services Department.

On April 8, 2005, an orthopedic specialist examined Kerr. Although the fracture had healed completely, Kerr still had pain. The orthopedic specialist instructed Kerr to maximize his range of motion exercises.

An April 17, 2005 report of an April 4, 2005 radiologic consultation stated verbatim:

> The previously described radial head fracture has healed with fracture impaction which opens the radiocapitellar joint. There is overlying soft tissue swelling laterally with a small bone fragment in the soft tissues. Degenerative changes are present in the ulnohumeral joint and there are 2 tendon anchors in the lateral epicondyle. There is fluid in the joint. The healing changes have occured since the 19 Jan 05 exam.

(Compl., Ex. D.)

On May 4, 2005, the orthopedic surgeon again examined Kerr, who still complained of elbow pain and inability to achieve full extension. The specialist recommended a computerized tomography ("CT") scan.

On June 9, 2005, Kerr requested an administrative remedy for the inadequate care he believed he had received on his elbow. On June 16, 2005, during the pendency of his request, a CT scan was performed at a facility in North Carolina. On June 21, 2005, Kerr's warden denied as meritless his request for an administrative remedy, citing the care Kerr had received since his injury.

On August 17, 2005, the orthopedic surgeon reviewed the June 16 CT scan with Kerr. Kerr alleges that the orthopedic surgeon told him that a second operation possibly could alleviate Kerr's pain and discomfort. The orthopedic surgeon stated that a review of the findings with another specialist would occur and Kerr's condition would be reevaluated in eight weeks.

On October 17, 2005, a BOP regional director denied an appeal of the earlier denial of Kerr's June 9 request for an administrative remedy. Kerr had filed the appeal on July 5, 2005, only shortly after the denial of his initial request for an administrative remedy and during the two-month interim between receiving his CT scan and meeting with the orthopedic surgeon to review the results.

Kerr did not show up for a follow-up appointment scheduled for November 11, 2005.

On December 28, 2005, a BOP national appeals administrator denied Kerr's appeal of the denial of his request for administrative remedy, encouraging Kerr to attend his scheduled appointments and assuring him that the prison's Chronic Care Clinic would continue to monitor his condition.

On January 23, 2006, a Utilization Review Committee determined that Kerr did not need additional surgery or a second opinion because his range of motion was "minimally restricted" and Kerr's disability was mild. (Compl., Ex. E.)

On August 10, 2006, Kerr filed an administrative tort claim with the BOP, alleging that BOP medical staff improperly treated him and that he suffered further pain and injury as a result. The BOP formally denied Kerr's administrative tort claim on January 19, 2007.

On July 17, 2007, Kerr filed this action against the United States Department of Justice under the FTCA, seeking $750,000 for the injuries he claims to have sustained from the improper care he alleges he received.

On December 21, 2007, Defendant mailed Kerr a letter requesting the written certification of an expert opinion required by section 8.01-20.1 of the Virginia Code.[3]

Kerr responded to Defendant's request for certification of an expert opinion in a letter dated January 8, 2008.[4] In his letter, Kerr claimed that he could not produce the statutorily mandated certificate because he is "limited to the various medical staff . . . provided . . . by the facility." (Br. in Supp. of Def.'s Mot. to Dismiss, Ex. 2.)

---

[3] Section 8.01-20.1 of the Virginia Code states in relevant part:

Every motion for judgment, counter claim, or third party claim in a medical malpractice action, at the time the plaintiff requests service of process upon a defendant, or requests a defendant to accept service of process, shall be deemed a certification that the plaintiff has obtained from an expert witness whom the plaintiff reasonably believes would qualify as an expert witness pursuant to subsection A of § 8.01-581.20 a written opinion signed by the expert witness that, based upon a reasonable understanding of the facts, the defendant for whom service of process has been requested deviated from the applicable standard of care and the deviation was a proximate cause of the injuries claimed. This certification is not necessary if the plaintiff, in good faith, alleges a medical malpractice action that asserts a theory of liability where expert testimony is unnecessary because the alleged act of negligence clearly lies within the range of the jury's common knowledge and experience.

. . . .

Upon written request of any defendant, the plaintiff shall, within 10 business days after receipt of such request, provide the defendant with a certification form that affirms that the plaintiff had obtained the necessary certifying expert opinion at the time service was requested or affirms that the plaintiff did not need to obtain a certifying expert witness opinion. If the plaintiff did not obtain a necessary certifying expert opinion at the time the plaintiff requested service of process on a defendant as required under this section, the court shall impose sanctions according to the provisions of § 8.01-271.1 and may dismiss the case with prejudice.

Va. Code § 8.01-20.1.

[4] Although Defendant describes the letter as undated, Kerr dated it on January 8, 2008.

On January 25, 2008, Defendant moved the Court to dismiss Kerr's action and on May 8, 2008, this Court ordered Kerr to show cause why his complaint should not be dismissed. Kerr responded to the Court in a letter dated May 16, 2008, that he was unable to provide the expert certification required by section 8.01-20.1 of the Virginia Code because he is "still incarcerated and ha[s] no access to any expert to try and correct the damage that has been created." (Pl.'s Resp. to Show Cause Order 2.)

### III. Discussion

**A.     The Federal Tort Claims Act and the Virginia Medical Malpractice Act**

The FTCA states that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Courts have found that the Virginia Medical Malpractice Act ("VMMA") governs medical malpractice claims for FTCA plaintiffs who allege they were harmed in Virginia.[5] *Parker v. United States*, 475 F. Supp. 2d 594, 596 (E.D. Va. 2007). The VMMA requires that a medical malpractice plaintiff obtain an expert's written opinion of the merit of his or her claim before serving process on a defendant. Va. Code § 8.01-20.1; *Perdieu v. Blackstone Family Practice Ctr., Inc.*, 568 S.E.2d 703, 711 (Va. 2002) (expert testimony required to establish the standard of care). The United States Court of Appeals for the Fourth Circuit has explained this need when addressing the treatment of a lung infection:

> Medicine is an inexact science and eminently qualified physicians may differ as to what constitutes a preferable course of treatment. Such differences as to preference do not amount to malpractice. To constitute malpractice, the proffered

---

[5] Other courts have noted that some questions exist as to whether or not the VMMA is procedural or substantive in nature. Only if it is substantive do its provisions bind this Court. *Sanchez-Angeles v. United States*, No. 7:07-cv-596, 2008 WL 2704309, at *5 (W.D. Va. July 10, 2008).

> expert must testify clearly that there has been a departure from acceptable medical standards . . . .
>
> . . . .
>
> . . . [W]hen a case concerns the highly specialized art . . . with respect to which a layman can have no knowledge at all, the court and jury must be dependent on expert evidence.

*Fitzgerald v. Manning*, 679 F.2d 341, 347-48 & n.4 (4th Cir. 1982) (quotations omitted). Non-compliance with the certification requirement can be grounds for dismissal. *See Parker*, 475 F. Supp. 2d at 596 & n.5; Va. Code § 8.01-50.1 ("the court . . . may dismiss the case with prejudice").

There are, however, "rare instances" in which "the alleged acts of medical negligence fall within the range of a jury's or factfinder's common knowledge and experience." *Parker*, 475 F. Supp. 2d at 597. In these cases, no expert certification is required. *See, e.g., Beverly Enters.-Va. v. Nichols*, 441 S.E.2d 1, 3 (Va. 1994) (no expert opinion needed where plaintiff alleged that a nursing home failed to prevent the choking death of a patient whom nursing home staff had been warned needed assistance eating). When a plaintiff believes no expert opinion is required, he or she must submit a certification form that "affirms that the plaintiff did not need to obtain a certifying expert witness opinion." Va. Code § 8.01-20.1. The Court need not rest on Va. Code § 8.01-20.1 to rule, however, because Kerr fails to prove negligence regardless.

**B.**     <u>**No Expert Certification**</u>

In this case, Kerr concedes that he failed to obtain a written, signed expert opinion required by Va. Code § 8.01-20.1. He does not maintain that no expert is needed to prove his case. Rather, he asserts that he is "still incarcerated and ha[s] no access to any expert to try and correct the damage that has been created." (Pl.'s Resp. to Show Cause Order 2.) This Court

finds that an expert would be required because Kerr's theory of negligence falls outside the jury's common knowledge and experience.

Without an expert, Kerr cannot establish the standard of care necessary to prove liability under the VMMA.[6] Kerr has not asked the Court to appoint an expert to aid him in his case. However, even if Kerr made such a request, there appears no "compelling circumstance[]" such that the Court would appoint an expert in this case. *Sanchez-Angeles*, 2008 WL 2704309, at *6 n.7 (citation omitted) ("[A] district court should appoint an expert to aid an indigent party only in 'compelling circumstances.'").

Courts may dismiss an indigent plaintiff's case for failing to provide an expert certification despite the fact that his or her prisoner status adds hurdles to any attempt to obtain an expert. *See, e.g.*, *id.* at *6 (granting the United States's motion for summary judgment on the inmate's FTCA/medical malpractice claim because the inmate had no expert to establish the standard of care); *Parker*, 475 F. Supp. 2d at 597 (not addressing the inmate's indigency, but dismissing the inmate's claim because he did not comply with the VMMA's certification requirement); *see also Whooten v. Bussanich*, No. 4:CV-04-223, 2007 WL 295398, at *4 (M.D. Pa. Jan. 29, 2007) (noting that, although district courts may consider appointing an expert witness at trial under Federal Rule of Evidence 706, "district courts are not authorized to provide

---

[6] Under Virginia law, for a plaintiff to establish a prima facie case for medical malpractice, he or she must establish "not only that a defendant violated the applicable standard of care, and therefore was negligent, the plaintiff must also sustain the burden of showing that the negligent acts constituted a proximate cause of the injury or death.'" *Bitar v. Rahman*, 630 S.E.2d 319, 323 (Va. 2006). Expert testimony generally is required to establish the standard of care. *Raines v. Lutz*, 341 S.E.2d 194, 197 (Va. 1986); *Bitar*, 630 S.E.2d at 323 (*citing Perdieu*, 568 S.E.2d at 710 (citation omitted)).

expert witness fees for indigent parties" to overcome motions for summary judgment and declining to do so in this case involving a prisoner). Without an expert, Kerr cannot sustain his claim.

### IV.  Conclusion

For the foregoing reasons, the Court shall GRANT Defendant's motion to dismiss. The Complaint shall be DISMISSED WITHOUT PREJUDICE.

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: August 20, 2008